IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**CHARLES E. DICKERSON,**

    **Plaintiff,**

    v.                                        CASE NO. 24-3184-JWL

**USP LEAVENWORTH, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff Charles E. Dickerson is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I. Nature of the Matter Before the Court**

Plaintiff, a former federal prisoner, brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff's claims arose during his incarceration at FCI-Leavenworth in Leavenworth, Kansas ("FCIL"), formerly named USP Leavenworth ("USPL").

Plaintiff alleges that his Eighth Amendment rights were violated at FCIL. He claims that on November 15, 2022, a corrections officer ("John Doe") confiscated his prescription eyeglasses without cause or explanation during a routine cell inspection. (Doc. 1, at 2.) Plaintiff immediately informed CO Doe "of his medical need for the glasses, explaining that without them, he suffers from severe headaches, dizziness, and difficulty reading or navigating his surroundings." *Id*. Plaintiff showed CO Doe the original property receipt for the glasses and told him they were

1

approved by the Health Services Administrator when he arrived at FCIL. *Id.* CO Doe nonetheless confiscated the glasses. *Id.*

Plaintiff states that he submitted several formal requests for return of the glasses over the following weeks. *Id.* He alleges that he experienced "constant headaches, blurred vision, and difficulty performing basic tasks due to his inability to see clearly." *Id.* He also experienced mental, physical, and emotional distress. *Id.*

On December 30, 2022, Plaintiff submitted a formal request through the prison grievance system for $25,000 in damages under the Federal Tort Claims Act ("FTCA"). *Id.* On January 3, 2023, Plaintiff was released from custody without his eyeglasses. *Id.* at 3. On March 16, 2023, he filed a Form 95 Claim for Damage, Injury, or Death, seeking compensation of $25,000. *Id.*

On April 17, 2023, Plaintiff received a response to his December 30 request from FCIL Warden Hudson. Hudson confirmed that medical records showed that Plaintiff's glasses had been approved and said that the glasses had been returned to Plaintiff's residence on February 13, 2023. *Id.* Plaintiff did not receive the glasses. Hudson noted that Plaintiff's request for compensation was not authorized under the administrative remedy process and advised that he should file a claim under the FTCA. *Id.*

On July 26, 2023, Plaintiff received an acknowledgment letter from Mary Noland, Regional Counsel for the U.S. Department of Justice. The letter confirmed receipt of Plaintiff's Form 95 and stated it had been accepted under the Small Claims for Damage to Property or Loss, pursuant to 31 U.S.C. § 3723. The letter indicated the claim was properly completed and the government's response was due by September 22, 2023. *Id.* However, Plaintiff has received no response.

2

Plaintiff secured full-time employment on April 22, 2024. *Id.* On June 22, 2024, he obtained vision insurance, and on September 19, 2024, he finally acquired a new pair of eyeglasses – 22 months after the confiscation of his glasses at FCIL. *Id.*

Plaintiff states that he was unable to pursue a claim under the FTCA within the required 6-month timeframe, so he filed this lawsuit. *Id.* at 4.

Plaintiff names as defendants USP Leavenworth, USP Leavenworth Health Services, USP Leavenworth Psychology, CO John Doe, and Warden Donald Hudson.[1] Plaintiff seeks compensatory damages of $50,000, punitive damages of $50,000, return of his eyeglasses, and a declaration that the defendants' actions violated his constitutional rights. *Id.* at 5.

## II. Legal Standards

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

A court may dismiss a complaint sua sponte under Rule 12(b)(6) "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991) (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991) (citations omitted)).

---

[1] The Court notes that Donald Hudson is no longer the warden at FCIL.

**III. DISCUSSION**

Plaintiff brings this Complaint under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). Because Plaintiff names federal, not state, actors as defendants, he fails to state a claim under § 1983.

The U.S. Supreme Court has permitted, in extremely limited circumstances, a damages claim against a federal officer in his individual capacity for a deprivation of constitutional civil rights. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("In *Bivens* - proceeding on the theory that a right suggests a remedy – [the United States Supreme] Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'") (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 68 (2001)). To state a *Bivens* claim, a plaintiff must allege the violation of a constitutional right by a federal officer[2] acting under color of federal authority. *Bivens*, 403 U.S. at 389.

In *Bivens*, the Supreme Court "held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" under the Fourth Amendment. *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). Since *Bivens*, the Supreme Court has recognized a *Bivens* remedy in *only two* other cases: *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980).

---

[2] Defendants USP Leavenworth, USP Leavenworth Health Services, and USP Leavenworth Psychology are improper defendants to a *Bivens* action as they are not "federal officers."

The Supreme Court has made it clear that expanding the *Bivens* remedy beyond the already recognized contexts is a "disfavored judicial activity." *Abbasi*, 582 U.S. at 135 (quotations omitted). Therefore, a plaintiff may proceed on a *Bivens* action only if the court determines the action survives a two-part inquiry. First, the court must determine whether the claim arises under a new *Bivens* context. If not, the claim may be brought under *Bivens*. However, if the claim involves a new context, the court may create a new *Bivens* remedy only if there are no special factors counseling hesitation against the creation of such a remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

As to the first part of the inquiry, the test is whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the United States Supreme] Court[.]" *Abbasi*, 582 U.S. at 139. In other words, courts should determine whether the claims at issue differ meaningfully from "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary [based on her gender]; and a claim against prison officials for failure to treat an inmate's asthma [resulting in his death]." *Id.* at 140. Therefore, it is not merely a question of whether a plaintiff's claim arises under the Fourth, Fifth, or Eighth Amendment. "A claim may arise in a new [*Bivens*] context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020).

Plaintiff has not shown that a *Bivens* remedy is available for his claim. The Tenth Circuit recently noted that the Supreme Court "is on course to treating *Bivens* as a relic of the 20th century" and that "[t]his development has been gradual, but relentless." *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024), *rehr'g denied* (Apr. 5, 2024). The Tenth Circuit in *Logsdon* found that:

5

> Without explicitly overruling its three acknowledged precedents, the [Supreme] Court has shown an increasing willingness to distinguish them, now stating that the ultimate question to ask when determining whether the courts should recognize a *Bivens* cause of action not created by Congress is ordinarily only "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492, 142 S. Ct. 1793, 213 L.Ed.2d 54 (2022). And the circumstances in which the answer to the question is "no" appears to comprise a null set. *See id.* at 503, 142 S. Ct. 1793. (Gorsuch, J., concurring) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action? It seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation."); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (quoting *Egbert*, 596 U.S. at 491, 142 S. Ct. 1793) (citation omitted)). The Court has said in effect that almost any difference between the case at hand and the three Court precedents can justify rejecting a cause of action. *See Egbert,* 596 U.S. at 503, 142 S. Ct. 1793 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").
>
> And, perhaps even more striking, the Court has justified a departure from those precedents even when the facts are virtually the same if the government can provide a reason for not recognizing a cause of action that was not considered in the applicable precedent. Thus, in *Egbert* itself the Court considered an excessive-force claim, similar to the one in *Bivens*, against a federal officer. *See Egbert*, 596 U.S. at 495, 142 S. Ct. 1793 ("*Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury." (internal quotation marks omitted)). But it held that the court of appeals erred by recognizing a cause of action under *Bivens*, distinguishing *Bivens* based on facts that have no bearing on the elements of an excessive-force claim: the incident arose in the "border-security context," and Congress had created remedies for misconduct by government agents. *See id.* at 494, 142 S. Ct. 1793. Given such hurdles placed in the way of a *Bivens* cause of action, Mr. Logsdon has no claim.

*Id*. at 1355–56.

The Tenth Circuit in *Logsdon* found that "[a] second independent ground for not recognizing a *Bivens* action . . . is that the availability of alternative remedies for misconduct . . . suggests that this court should not be the institution to create a remedy." *Id*. at 1359. "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* (quoting *Egbert*, 596 U.S. at 493). The Tenth Circuit quoted *Egbert* as follows:

> "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Id.* at 498, 142 S. Ct. 1793 (internal quotation marks omitted).

*Id*.

In *Silva*, the Tenth Circuit held that the Bureau of Prison's Administrative Remedy Program "ARP" was adequate. *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (finding that the key takeaway from *Egbert* is "that courts may dispose of *Bivens* claims for 'two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs") (citation omitted); *see also Noe v. United States Gov't*, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023) ("We need not decide whether Noe's case is meaningfully different from *Carlson*, because in the wake of *Egbert* and *Silva* . . . the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity between the two.").

In *Silva*, the Tenth Circuit had little difficulty in concluding "that the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring.'" *Silva*, 45 F.4th at 1141

(citation omitted).  The *Silva* court found that "because *Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers,'. . . the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim." *Id*. (citing *Egbert*, 596 U.S. at 498 (quoting *Malesko*, 534 U.S. at 71)).

Based on the reasoning set forth in the recent Tenth Circuit opinions cited above, the Court finds that Plaintiff fails to state a claim for relief under *Bivens*.  Further, Plaintiff's request for declaratory relief would be moot because he is no longer incarcerated at FCIL.  "A claim for declaratory relief that does not 'settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff' is moot, *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotations omitted), because it fails to 'seek[ ] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant[.]" *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011)); *see also Church v. Polis*, 2022 WL 200661, at *4 (10th Cir. Jan. 24, 2022) ("But declaratory-judgment claims become moot if circumstances change such that the defendants are not 'actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights.'") (citation omitted).

## IV. Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **January 21, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated December 20, 2024, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**
